**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| CYNTHIA ZAPATA, ) | No. ED CV 17-204-PLA |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| v. ) | |
| ) | |
| NANCY BERRYHILL, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 3, 2017, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on February 21, 2017, and March 6, 2017. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on March 30, 2018, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.
## BACKGROUND

Plaintiff was born on July 20, 1962. [Administrative Record ("AR") at 26, 141.] She has past relevant work experience in the combination position of cashier supervisor and as a retail chain store area supervisor. [AR at 26, 58.]

On May 20, 2013, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since January 1, 2012. [AR at 17, 141-42.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 97.] A hearing was held on May 1, 2015, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 32-60.] A vocational expert ("VE") also testified. [AR at 51-59.] On June 3, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from January 1, 2012, the alleged onset date, through June 3, 2015, the date of the decision. [AR at 17-27.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 11.] When the Appeals Council denied plaintiff's request for review on December 7, 2016 [AR at 1-8], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be

upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has

a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date.[1] [AR at 19.] At step two, the ALJ concluded that plaintiff has the severe impairments of obesity, bilateral knee sprain/strain, and left shoulder sprain/strain. [Id.] He also found that her medically determinable mental impairment of major depressive order "does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere." [AR at 20.] The ALJ further found that plaintiff retained the residual

---

[1] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 30, 2017. [AR at 19.]

functional capacity ("RFC")[2] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[3] as follows:

> [Plaintiff] could not lift and/or carry over ten pounds; she could sit for six hours out of an eight-hour workday; she could stand and/or walk for six hours out of an eight-hour workday with a sit/stand option as needed for comfort; she is not to lift or reach above shoulder level; she is not to kneel, squat or bend to the floor; she could occasionally bend and stoop; and she will miss work once a month.

[AR at 21.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform her past relevant work in the combination position of cashier supervisor and as a retail chain store area supervisor, but also determined that she had acquired work skills from her past relevant skilled work that were transferable, including supervision, cashiering, record searching, reconciling invoices, customer service, and handling complaints. [AR at 26, 52-53, 54-55.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "customer complaint clerk" (Dictionary of Occupational Titles ("DOT") No. 241.367-014). [AR at 26-27.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 1, 2012, through June 3, 2015, the date of the decision. [AR at 27.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he determined that plaintiff could perform the

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

alternative work as a customer complaint clerk. [JS at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.    STEP FIVE**

In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform her past relevant work, the VE generally will refer to the DOT. See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). The DOT is usually "the best source for how a job is generally performed." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). Social Security Ruling ("SSR")[4] 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT).[5] The procedural requirements of

---

[4] "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[5] SSR 00-4p provides in relevant part:

> When a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any <u>possible conflict</u> between that VE . . . evidence and information provided in the DOT. . . .
> . . . .
> If the VE's . . . evidence <u>appears to conflict</u> with the DOT, the [ALJ] will obtain a reasonable explanation for the <u>apparent conflict</u>.
> . . . .
> When vocational evidence provided by a VE . . . is <u>not consistent with</u> information in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. <u>The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified</u>.

SSR 00-4p (emphasis added). SSR 00-4p similarly provides that "[w]hen there is an <u>apparent unresolved conflict</u> between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable
(continued...)

SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. Massachi, 486 F.3d at 1153. In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, an ALJ must first determine whether a conflict exists, and if it does, he must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. Id.

Ninth Circuit law "is clear that a counsel's failure [to raise an issue] does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: 'When there is an apparent conflict between the vocational expert's testimony and the DOT -- for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle -- the ALJ is *required* to reconcile the inconsistency.'" Lamear v. Berryhill, 865 F.3d 1201, 1206 (9th Cir. 2017) (quoting Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015)); see also SSR 00-4p; Massachi, 486 F.3d at 1152-53; Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel). Thus, "the fact that Plaintiff's representative did not challenge the VE's testimony as inconsistent with the DOT at the time of the hearing is not conclusive as to whether an apparent conflict exists, nor does it constitute a waiver of the argument." Gonzales v. Astrue, 2012 WL 2064947, at *4 (E.D. Cal. June 7, 2012) (citing Sims v. Apfel, 530 U.S. 103, 111-12, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000)).

Only after determining whether the testimony of the VE has deviated from the DOT, and

---

[5](...continued)
explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." Id. (emphasis added).

whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. As noted by the Ninth Circuit, "[t]he requirement for an ALJ to ask follow up questions is fact-dependent," and "the more obscure the job, the less likely common experience will dictate the result." Lamear, 865 F.3d at 1205 (noting that to avoid unnecessary appeals, "an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC"); see also Gutierrez v. Colvin, 844 F.3d 804, 808-09 (9th Cir. 2016). Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).

## B. THE PARTIES' CONTENTIONS

As relevant here, plaintiff's RFC provides that she can (1) sit for six hours out of an eight-hour workday, and stand and/or walk for six hours out of an eight-hour day, with an option to sit/stand "as needed for comfort," and (2) precludes her from lifting or reaching above shoulder level. [AR at 21.] The ALJ's hypothetical to the VE included these limitations. [AR at 52, 53.] The DOT describes the physical demands for the occupation of "customer complaint clerk" (DOT No. 241.367-014) as requiring occasional (up to 1/3 of the time) reaching, and as involving "sitting most of the time, but may involve walking or standing for brief periods of time"; indeed, jobs "are sedentary if walking and standing are required only occasionally . . . ." DOT No. 241.367-014.

### 1. The Sit/Stand Option

Plaintiff argues that the sit/stand restriction in her RFC does not allow for the performance of the customer complaint clerk position, because "the DOT does not discuss the availability of an option to alternate positions," and the VE did not provide an explanation for the deviation from the

8

DOT description. [JS at 6-7 (citations omitted).] She submits that "[t]here is simply no evidence" that the VE relied on or provided other than the information found in the DOT. [JS at 8.] Plaintiff observes that district courts in the Northern District of California have construed Massachi "to mean that where an expert opines on an issue about which the DOT is silent, a conflict exists." [JS at 9 (citing cases).] Thus, because a potential inconsistency exists between the VE testimony and the DOT, plaintiff argues that further inquiry was warranted. [Id.]

Defendant responds that the ALJ satisfied SSR 00-4p when he verified that the VE's testimony was consistent with the DOT. [JS at 18 (citing AR at 57).] Defendant further states that even if the ALJ did err, the error was harmless under the law and the facts of this case. [Id. (citations omitted).] Defendant argues that the DOT is "simply a limited resource and does not expressly identify alternating between sitting and standing or overhead reaching, only the general requirements of sitting, standing, and reaching." [Id. (citing SSR 00-4p).] Defendant then cites a number of cases for the proposition that case law "actually states that where the DOT is silent on a particular function of a job, an apparent conflict does *not* arise" -- which is contrary to the proposition (and case law) suggested by plaintiff that where an expert opines on an issue about which the DOT is silent, a conflict exists. [JS at 18-19 (citing cases) (emphasis added).] Defendant also notes that the DOT description for the customer complaint clerk position "gives no indication that a sit/stand option would be precluded or that overhead reaching would be necessary." [JS at 20.] Additionally, she argues, the definition of sedentary means the position involves sitting most of the time, but may involve walking or standing for brief periods of time, which defendant deems to be "consistent with the VE's determination that th[is] job[] would accommodate Plaintiff's need to change positions." [Id. (citing DOT No. 241.367-014).] Defendant further submits that plaintiff's counsel's failure to raise the purported sit/stand and reaching conflict issues during his questioning of the VE is "especially egregious here," where the ALJ specifically raised the issue of the sit/stand option and reaching and, although counsel questioned the VE on other aspects of her testimony, he did not otherwise identify any conflicts with the DOT. [JS at 20-21 (citations omitted).] Thus, as evidenced in part by the competing case law presented by the parties [compare JS at 9-19 with JS at 18-19], case law on this sit/stand issue is not uniform.

The hearing transcript reflects that the ALJ questioned the VE as to the RFC limitation or limitations that eliminate the hypothetical individual's ability to do her past relevant work. [AR at 53-54.] The VE noted that the hypothetical individual would be unable to perform the past work "because of the lifting [over 10 pounds], and also the sitting and standing." [AR at 53.] The following colloquy then occurred:

> [ALJ:] Okay, so just the lifting limitation would eliminate the prior work, either as normally performed or as she actually did it. Is that right? Yes?
>
> [VE:] And also the sit and stand yeah. You're correct. The sitting and standing alternating as needed.
>
> [ALJ:] So a manager doesn't have the discretion to sit or stand to do the manager's job?
>
> [VE:] Yes, they do. But it would depend on the quantification -- well -- it's a supervisor.
>
> [ALJ:] What's --
>
> [VE:] It -- okay, what is the one I'm hesitating is the as needed . . . , and so how much is needed. Can it be five minutes, or 10 minutes, or one hour, or -- that's what [sic] I am unable to answer that.
>
> [ALJ:] Okay, but anyway it can't be done because of the lifting requirement?
>
> [VE:] Yes.

[AR at 53-54.] Thus, the VE herself raised the issue of how and whether an unquantified need to alternate positions, i.e., "as needed," would affect plaintiff's ability to perform her *past work*. Although the ALJ clarified with the VE that the alternative occupation of customer complaint clerk has a "sit/stand option" and can be performed "either sitting or standing" [AR at 57], the ALJ failed to ask for an explanation, and the VE provided no explanation, as to why the same unquanitifed RFC requirement regarding the option to alternate positions "as needed" would not also impact plaintiff's ability to perform the customer complaint clerk position.

Based on the foregoing, remand is warranted on this issue to determine whether plaintiff's unquantified RFC limitation to alternate positions "as needed," conflicts with the job requirements

for the customer complaint clerk occupation.

### 2. Preclusion from Reaching or Lifting Above Shoulder Level

Reaching is described by the Social Security Administration as "extending the hands and arms *in any direction*." SSR 85-15 (emphasis added); see also Gutierrez, 844 F.3d at 808 (acknowledging that pursuant to SSR 85-15, reaching "connotes the ability to extend one's hands and arms in any direction"); Mkhitaryan v. Astrue, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) (citing the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), app. C) ("the plain meaning of 'reaching' under the SCO encompasses above-the-shoulder reaching"); see White v. Colvin, 2016 WL 4402798, at *4 (C.D. Cal. Aug. 17, 2016) ("'[a]ny direction' would appear to include overhead") (citations omitted). Consequently, "many courts have discerned a conflict between the requirement of frequent reaching and a preclusion or restriction on reaching overhead or above the shoulder." White, 2016 WL 4402798, at *4 (citing cases finding such a conflict). Thus, as was true of case law regarding the sit/stand option, case law relating to reaching requirements also is not uniform. See, e.g., Brewer v. Colvin, 2016 WL 4491498, at *3 & n.4 (C.D. Cal. Aug. 24, 2016) (citing cases); White, 2016 WL 4402798, at *4 & n.5 (citing cases).

Because the DOT job description for the customer service clerk occupation suggested by the VE does not distinguish between the kind of reaching involved (front, lateral, or overhead), plaintiff argues that the occasional reaching requirement for this position exceeds her RFC, which precludes her from "lift[ing] or reach[ing] above shoulder level" and, because the ALJ failed to identify and obtain a reasonable explanation from the VE regarding this deviation from the DOT, reversal is warranted. [JS at 5-10, 15-17 (citations omitted).]

Defendant responds with the same arguments she made with respect to the sit/stand option, noting that there is "no binding precedent on this matter." [JS at 21.]

It is the ALJ who bears the burden of making the necessary inquiry of the VE. SSR 00-4p; Massachi, 486 F.3d at 1152-53; see Smolen, 80 F.3d at 1288 (ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the

claimant is represented by counsel). Here, other than the brief discussion of the sit/stand option as discussed above, neither the ALJ nor the VE identified any potential conflict or deviation from the DOT due to plaintiff's preclusion from lifting; neither did the VE provide any explanation to resolve any potential or apparent conflict. Indeed, although the ALJ questioned the VE about the reaching requirement for the customer complaint clerk position and the VE *confirmed* that it requires <u>occasional</u> reaching, handling, and fingering,[6] the ALJ did not then further question the VE regarding this apparent inconsistency between plaintiff's preclusion from reaching above shoulder level (whether that reaching was to the front, overhead, or laterally) and the DOT job requirements. Moreover, *after* the VE testified, the ALJ simply asked her whether her testimony was consistent with the DOT, and the VE responded that it was consistent. [AR at 57.] An ALJ "cannot simply rely on the VE's testimony that no . . . conflicts exist." See Marquez v. Astrue, 2012 WL 3011779, at *2-3 (D. Ariz. July 23, 2012); see Gutierrez, 844 F.3d at 808 (to be fairly characterized as a conflict, the VE's testimony must be at odds with the DOT's listing of job requirements that are essential, integral, or expected).

However, the Ninth Circuit recently observed that the DOT lists maximum requirements for jobs as generally performed and, therefore, not all potential conflicts between an expert's job suitability recommendation and the DOT's listing of maximum requirements for an occupation will be apparent or obvious. Gutierrez, 844 F.3d at 807-08. The court stated that "an ALJ need only follow up on those that are," and this duty "does not extend to unlikely situations or circumstances." Id. at 808 (stating that had the ALJ determined Gutierrez could stock shelves or wash windows, the conflict would have been apparent and obvious; an ALJ need not follow up with more specific questions where the frequency or necessity of a task "is unlikely and unforeseeable -- as it is with cashiers having to reach overhead . . ."). With respect to the cashier position at

---

[6] The following is the relevant excerpt from the hearing transcript:
    Q How frequently is the use of the hands [for the customer service clerk position]?
    A Occasionally, reaching and handling, and fingering.
    Q Occasionally? Occasional reaching, handling, and fingering?
    A Correct.
[AR at 56-57.]

issue in Gutierrez, the Ninth Circuit noted that "tasks that aren't essential, integral, or expected parts of a job [included in the DOT's definition of the job] are less likely to qualify as apparent conflicts that the ALJ must ask about . . . [and] where the job itself is a familiar one -- like cashiering -- less scrutiny by the ALJ is required." Id. The court considered Gutierrez' weight bearing and overhead reaching limitations with her right arm, along with the DOT's general statement that cashiering requires "frequent" reaching, and observed that "[w]hile 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' not every job that involves reaching requires the ability to reach overhead . . . [and] [c]ashiering is a good example." Id.

This case is analogous to Gutierrez. The DOT requirements for the customer complaint clerk occupation contain such tasks as the following: examining records and conversing or corresponding with the customer or company personnel to obtain facts about the customer complaint; examine pertinent information to determine accuracy of complaint; notify customer and company of findings, adjustments and recommendations; recommend changes to management to prevent future complaints; and "may examine merchandise to determine accuracy of complaint." DOT No. 241.367-014. Thus, despite the DOT's indication that this position requires occasional reaching, there is nothing in the list of tasks that such reaching would occur above shoulder level (in any direction). Additionally, as in Gutierrez, the common sense understanding of this position would suggest that the frequency or necessity of reaching above the shoulder to perform any of these tasks is "unlikely and unforeseeable." Gutierrez, 844 F.3d at 808. The "requirement for an ALJ to ask follow up questions is fact-dependent" and "while there may be exceptional circumstances where [customer complaint clerks] have to reach overhead," the facts and circumstances of this case do not present any. Gutierrez, 844 F.3d at 808-09.

Remand is not warranted on this issue. However, on remand, should this position again be suggested by the VE as one that plaintiff can perform despite her RFC limitation precluding her from reaching or lifting above shoulder level, it may nevertheless be prudent to make this inquiry of the ALJ to foreclose any doubt as to this issue. See Lamear, 865 F.3d at 1205 (noting that "[t]o avoid unnecessary appeals, an ALJ should ordinarily ask the VE to explain in some detail why there is no conflict between the DOT and the applicant's RFC," and that "[d]oing so [in Lamear's

13

case] likely would have eliminated the need for this appeal") (citing Gutierrez, 844 F.3d at 808).

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. Because plaintiff's RFC[7] includes an option to sit or stand "as needed," the ALJ must determine, with the assistance of a VE, whether plaintiff's unquantified RFC limitation to alternate positions "as needed," conflicts with the job requirements for the customer complaint clerk occupation. If the ALJ determines that plaintiff can still perform the alternative occupation of customer complaint clerk despite the sit/stand "as needed" RFC limitation, the ALJ may also determine whether plaintiff's preclusion from lifting or reaching above shoulder level conflicts with the requirements for this position, or otherwise erodes the available positions. If the VE determines that a person with plaintiff's RFC is unable to perform the position of customer complaint clerk, the ALJ shall determine, at step five, with the assistance of a VE if necessary, whether there are other jobs existing in significant numbers in the national economy that plaintiff can still perform. See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

---

[7] Nothing in this decision is intended to disrupt the ALJ's RFC determination, his step four determination that plaintiff is unable to perform her past relevant work, or his determination that plaintiff acquired transferrable work skills from her past relevant work as a cashier supervisor.

## VII.
## <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 17, 2018

*Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE